|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>**NORRIS, McLAUGHLIN & MARCUS, PA**<br>721 Route 202-206, Suite 200<br>P.O. Box 5933<br>Bridgewater, New Jersey 08807<br>(908) 722-0700 (Tel)<br>(908) 722-0755 (Fax)<br>Morris S. Bauer, Esq.<br>Larry K. Lesnik, Esq.<br>*Proposed Attorneys for the Debtor/Debtor-In-Possession* | |
| In Re:<br><br>RAMS ASSOCIATES, L.P.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 13-25541<br><br>Judge: |

STATE OF NEW JERSEY    )
                                         ) ss.:
COUNTY OF SOMERSET  )

JOHN SABO, of full age, being duly sworn according to law, upon his oath, deposes and states:

1. I am a General Partner of Rams Associates, L.P. (the "<u>Debtor</u>").

2. I am fully familiar with the Debtor's operations and business affairs, and duly authorized to make this Affidavit on behalf of the Debtor. This Affidavit is intended to assist the Court and other parties-in-interest in understanding the circumstances that compelled the Debtor's superseding Chapter 11 filing and to provide general information about the Debtor and its business operations that are germane to the First Day Motions (as defined below).

3. If called upon to testify, I could and would testify competently to the facts set forth herein, unless otherwise noted.

4. On June 25, 2013, a Chapter 7 involuntary petition was filed against the Debtor by four petitioning creditors.

5. Upon information and belief, an involuntary summons with respect to such filing was issued on June 26, 2013 but was never served on the Debtor.

6. On July 16, 2013 (the "Petition Date"), the Debtor filed a superseding voluntary petition for relief pursuant to Title, 11, Chapter 11 of the United States Code (the "Bankruptcy Code").

7. Since the Petition Date, the Debtor has remained in possession of its assets and continued management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

8. To minimize the potential disruptive impact the commencement of this Chapter 11 case might otherwise have on the Debtor's ability to conduct its business and formulate a plan of reorganization, the Debtor has requested the Court to consider, on an expedited basis, the following two (2) "first day" motions (the "First Day Motions"): (i) Motion for an Order Granting the Debtor's Interim and Final Use of Cash Collateral Pursuant to 11 U.S.C. §§ 363 and 364 and Federal Rule of Bankruptcy Procedure 4001 (the "Cash Collateral Motion"); and (ii) Motion for an Order Authorizing, But Not Directing, the Debtor to Pay Pre-Petition Wages, Salaries, Taxes and Other Compensation (the "Wage Motion").

9. The purposes of the First Day Motions include, among other things: (a) assisting the Debtor in continuing to operate in the ordinary course of business; (b) easing the Debtor's transition into Chapter 11; (c) allowing for the efficient and orderly administration of this case; and (d) providing the Debtor with a "breathing spell" from aggressive creditor action while the

1132975_1

Debtor formulates and proposes a plan of reorganization designed to maximize recoveries for the estate, creditors and other stakeholders.

## Background

10. The Debtor was formed in 1993 as a Limited Partnership in the State of New Jersey. I am a General Partner of the debtor and a direct and indirect owner of a portion thereof.

11. The Debtor is the owner and operator of the Jersey Shore Arena (the "Arena"), which is located on 15 acres at 1215 Wyckoff Road, Farmingdale, New Jersey. The Arena consists of 3 NHL size ice rinks, a café, pro-shop laser tag facility, arcade and indoor turf field.

12. The Debtor's primary asset is the Arena, including all machinery and equipment and furniture, fixtures and equipment used to operate the Arena and any accounts receivables derived from operations. The value of the Arena may be in excess of $11,500,000.[1]

13. As of the Involuntary Commencement Date, The Bancorp Bank ("Bancorp") was the Debtor's primary lender having a first priority security interest in substantially all of the Debtor's assets. As of the Involuntary Commencement Date, the Debtor was indebted to Bancorp in the approximate amount of $11,500,000. Upon information and belief prior to the Petition Date, Athletic Community Team, LLC ("ACT"), an entity controlled by Alex Shnayderman, acquired the Bancorp loan.

14. In addition, the Arena is subject to a mortgage held by John Sabo, Linda Sabo, Joseph Carballeira and Catherin Carballeira (the "Second Mortgage Holders") in the aggregate approximate amount of $4,250,000. Also, there are outstanding pre-Petition Date real estate taxes and tax sale certificates that may aggregate approximately $500,000 or more. Sovereign Bank may also hold a mortgage on the Arena.

---

[1] As of the date, the Debtor has not retained an appraiser to value same.

15. The Debtor currently employs 6 full-time employees and 36 part-time employees. Its payroll approximates $35,000 per month.

16. The Debtor's unsecured claims approximate $4,000,000, excluding any deficiency claims of secured lenders and the claims that I hold personally.

### Factors Leading up to Chapter 11 Filing

17. As indicated, four creditors filed an involuntary Chapter 7 petition against the Debtor on June 25, 2013. Rather than consent to a liquidation in a Chapter 7 proceeding, or file an answer disputing its eligibility as a debtor, the Debtor chose to file a superseding Chapter 11 petition.

18. Prior to the Petition Date, the Debtor believed that it had negotiated a resolution with all of its various creditor constituencies. The resolution envisioned the sale of the Arena to ACT. In concert with the sale, it was anticipated that the general partners would be funding a distribution to creditors. Unfortunately, there were delays in the sale and the payments to creditors did not meet the designated time frames. The result of the delay was the involuntary petition.

19. Since the Involuntary Commencement Date, ACT has requested that the sale occur within the chapter 11 proceeding. ACT has advised that it acquired the Bancorp loan. The Debtor is in discussions with ACT regarding a consensual plan of reorganization that the Debtor anticipates will incorporate the pre-Petition Date deals negotiated with the various creditor constituencies.

1132975_1

### Post-Petition Operations

20. Subsequent to the Petition Date, the Debtor anticipates continuing its operations of an indoor ice rink in Wall, New Jersey. Annexed hereto as Exhibit "A" is the Debtor's 13-week cash flow budget. The Debtor's budget is intended to be conservative.

### Factors Important to the Success of this Chapter 11 Case

21. The Debtor does not intend to languish in Chapter 11. The Debtor intends on quickly filing a plan of reorganization that will allow for the maximizing of asset values for the benefit of all creditors.

22. The First Day Orders will enable the Debtor to stabilize and proceed accordingly.

23. Accordingly, the Debtor respectfully requests that the Court enter the First Day Orders.

### Motion for Use of Cash Collateral

24. By the Debtor's Motion for the Entry of an Order Authorizing Interim and Final Use of Cash Collateral (the "Cash Collateral Motion"), the Debtor seeks authority to use cash collateral pursuant to sections 105, 363(c)(2)(B) and 363(e) of the Bankruptcy Code.

25. Bancorp or ACT has a first priority security interest in substantially all of the Debtor's assets, including its cash, cash equivalents and accounts receivable (collectively, the "Cash Collateral").

26. As set forth more fully in the Cash Collateral Motion, the Debtor should be authorized to use the Cash Collateral in the ordinary course of its business and in accordance with the Budget annexed as Exhibit "A" hereto and also annexed as Exhibit "A" to the Cash Collateral Motion. Bancorp or ACT's security interest is not being diminished by the use of Cash Collateral.

1132975_1

27.     It is in the best interests of the Debtor and the estate that the Debtor's operations continue as any cessation in business will materially effect the value of the Debtor's assets and, more importantly, affect the lives of its employees who would likely have great difficulties in locating new jobs given the current state of the economy. Accordingly, the Debtor must be authorized to use the Cash Collateral.

## Wage Motion

28.     By the Wage Motion, the Debtor seeks authorization to pay certain pre-petition obligations to and on behalf of the current employees, including, but not limited to, the amounts owed for wages, salaries, commissions and all related taxes. In addition, the Debtor requests authorization to continue to honor its paid time off policy in a fashion that would allow each employee to continue to be paid for the days in which they utilize their vacation or sick days (collectively, the pre-petition wages, etc. and the paid time off are referred to as the "Pre-Petition Employee Obligations") .

29.     With respect to Wages, the Debtor pays every two weeks, nine days in arrears. By way of example, the July 23, 2013 payroll covers the period from July 1, 2013 through July 14, 2013. As a result thereof, the Debtor estimates the total amount of Pre-Petition Employee Obligations sought to be paid pursuant to this Motion will be approximately $19,000.00 - $20,000.00, which includes all applicable taxes.

30.     The Debtor has no 401(k) plan.

31.     Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, claims against a debtor for "wages, salaries, or commissions, including vacation, severance and sick leave pay," earned within one hundred eighty (180) days before the Petition Date, are afforded unsecured priority status to the extent of $12,475 per employee.

1132975_1

32. I am advised that, in the instant case, the Pre-Petition Employee Obligations constitute Priority Claims.

33. Many of the Debtor's employees are compensated at modest levels. It would cause a great hardship to them if they were to lose (or suffer delay in receiving) their pay and/or benefits.

34. To avoid the hardship that the Debtor's employees may otherwise suffer and to maintain morale for the employees that have remained with the Debtor under what are and will continue to be extremely difficult working conditions, the Debtor seeks authority to satisfy the Pre-Petition Employee Obligations.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: July 16, 2013

/s/ John Sabo
John Sabo
General Partner

# EXHIBIT A

# RAMS ASSOCIATES, LP
## 13 WEEK CASH FLOW BUDGET

|  | Jul-13 | Aug-13 | Sep-13 | Oct-13 |
|---|---:|---:|---:|---:|
| **BEGINNING CASH** | 34,442 | 10,944 | (7,789) | 8,478 |
|  |  |  |  |  |
| **RECEIPTS** | 10,000 | 85,000 | 120,000 | 120,000 |
|  |  |  |  |  |
| **DISBURSEMENTS** |  |  |  |  |
| JCPL Acct 1 | 0 | 17,000 | 17,000 | 17,000 |
| JCPL Acct 2 | 0 | 15,000 | 15,000 | 15,000 |
| NJ Natural Gas Acct 1 | 0 | 3,800 | 3,800 | 3,800 |
| NJ Natural Gas Acct 2 | 0 | 3,400 | 3,400 | 3,400 |
| Verizon | 0 | 550 | 550 | 550 |
| Optimum | 0 | 189 | 189 | 189 |
| Jersey Elevator | 0 | 197 | 197 | 197 |
| ADP - Payroll | 15,000 | 30,000 | 30,000 | 30,000 |
| Affordable Pump | 0 | 149 | 149 | 149 |
| Chem Search | 0 | 1,200 | 1,200 | 1,200 |
| Creative Inc. Web | 0 | 3,200 | 3,200 | 3,200 |
| CM Mechanical (Service Contract) | 2,315 | 2,315 | 2,315 | 2,315 |
| Horizon (Health Insurance) | 0 | 1,300 | 1,300 | 1,300 |
| Jersey Paper Co. | 0 | 750 | 750 | 750 |
| Philadelphia Liability Insurance | 6,900 | 6,900 | 6,900 | 6,900 |
| Sakontis Disposal | 843 | 843 | 843 | 843 |
| Referee Payments | 6,400 | 12,800 | 12,800 | 12,800 |
| Town Square Media Advertisement | 500 | 1,000 | 1,000 | 1,000 |
| Office Supplies & Equipment | 0 | 600 | 600 | 600 |
| Reynwood Phone System | 540 | 540 | 540 | 540 |
| United States Trustee Fees |  |  |  | 1,950 |
| Miscellaneous Repairs | 750 | 1,500 | 1,500 | 1,500 |
| Miscellaneous Cash Expense | 250 | 500 | 500 | 500 |
|  |  |  |  |  |
| **TOTAL DISBURSEMENTS** | 33,498 | 103,733 | 103,733 | 105,683 |
|  |  |  |  |  |
| **ENDING CASH** | 10,944 | (7,789) | 8,478 | 22,795 |