UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

**NORRIS, McLAUGHLIN & MARCUS, PA**
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, New Jersey 08807
(908) 722-0700 (Tel)
(908) 722-0755 (Fax)
Morris S. Bauer, Esq.
Larry K. Lesnik, Esq.
*Proposed Attorneys for the Debtor/Debtor-In-Possession*

| | |
|---|---|
| In Re:<br><br>RAMS ASSOCIATES, L.P.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 13-25541<br><br>Judge: |

## MOTION OF THE DEBTOR FOR THE ENTRY OF AN ORDER AUTHORIZING INTERIM AND FINAL USE OF CASH COLLATERAL

Rams Associates, L.P. (the "Debtor"), by and through the Debtor's proposed counsel, Norris McLaughlin & Marcus, P.A., hereby moves before this Court (the "Motion") for entry of an order authorizing the Debtor's interim and final use of cash collateral pursuant to sections 105, 363(c)(2)(B) and 363(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully represent as follows:

### INTRODUCTION AND JURISDICTION

1. On June 25, 2013 (the "Involuntary Commencement Date"), a Chapter 7 involuntary petition was filed against the Debtor by four petitioning creditors.

2. Upon information and belief, an involuntary summons with respect to such filing was issued on June 26, 2013, but was never served on the Debtor.

3. On July 16, 2013 (the "Petition Date"), the Debtor filed a superseding petition for relief under Chapter 11 of Bankruptcy Code. The Debtor continues to operate its business as a debtor-in-possession in accordance with Sections 1107(a) and 1108 of the Bankruptcy Code.

4. As set forth below, granting the Debtor the relief requested in the Motion is crucial to the Debtor's ability to operate its business and/or proceed to maximize asset values for the benefit of creditors during this Chapter 11 proceeding without interruption.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (M).

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1409 and 1409.

## BACKGROUND

7. A thorough description of the Debtor's operations is set forth in the Affidavit of John Sabo in Support of First Day Motions (the "Sabo Affidavit"), which is being filed contemporaneously with, and in support of, this Motion. The Sabo Affidavit includes, among other things, and without limitation, descriptions of the Debtor's formation, pre-petition financing, the events precipitating this Chapter 11 filing, as well as the Debtor's objectives while in Chapter 11. The Sabo Affidavit is incorporated herein by reference as if fully set forth herein.

8. The Debtor is the owner and operator of the Jersey Shore Arena (the "Arena"), which is located on 15 acres at 1215 Wyckoff Road, Farmingdale, New Jersey. The Arena consists of 3 NHL size ice rinks, a café, pro-shop, laser tag facility, arcade and indoor turf field.

9. The Debtor's primary asset is the Arena, including all machinery and equipment and furniture, fixtures and equipment used to operate the Arena and any accounts receivables derived from operations. The value of the Arena may be in excess of $11,500,000.[1]

10. As of the Involuntary Commencement Date, The Bancorp Bank ("Bancorp") was the Debtor's primary lender having a first priority security interest in substantially all of the Debtor's assets. As of the Involuntary Commencement Date, the Debtor was indebted to Bancorp in the approximate amount of $11,500,000. Upon information and belief prior to the Petition Date, Athletic Community Team, LLC ("ACT"), an entity controlled by Alex Shnayderman, acquired the Bancorp loan.

11. In addition, the Arena is subject to a mortgage held by John Sabo, Linda Sabo, Joseph Carballeira and Catherin Carballeira (the "Second Mortgage Holders") in the aggregate approximate amount of $4,250,000. Also, there are outstanding pre-Petition Date real estate taxes and tax sale certificates that may aggregate approximately $500,000 or more. Sovereign Bank may also hold a mortgage on the Arena.

12. The Debtor's unsecured claims approximate $4,000,000, excluding any deficiency claims of secured lenders and claims held by insiders.

13. The Debtor currently employs 6 full-time employees and 36 part-time employees. Its payroll approximates $35,000 per month.

14. The Debtor proposes the use of Cash Collateral during the initial three months of this case in accordance with the Debtor's budget (the "Budget") attached hereto as Exhibit "A".

15. The Debtor does not intend to languish in Chapter 11. Prior to the Petition Date, the Debtor believed that it had negotiated a resolution with all of its various creditor constituencies. The resolution envisioned the sale of the Arena to ACT. In concert with the

---

[1] As of the date, the Debtor has not retained an appraiser to value same.

3

1133164_1

sale, it was anticipated that the general partners would be funding a distribution to creditors. Unfortunately, there were delays in the sale and the payments to creditors did not meet the designated time frames. The result of the delay was four creditors filing the involuntary petition. Since the Involuntary Commencement Date, ACT has requested that the sale occur within the chapter 11 proceeding. ACT has advised that it acquired the Bancorp loan. The Debtor is in discussions with ACT regarding a consensual plan of reorganization that the Debtor anticipates will incorporate the pre-Petition Date deals negotiated with the various creditor constituencies.

16. The Debtor intends to quickly file a plan of reorganization that will allow for the maximizing of asset values for the benefit of all creditors and in an effort to effectuate the deals that the Debtor had negotiated prior to the filing of the involuntary petition.

17. The Debtor requires the continued use of Cash Collateral in order to continue its efforts to stabilize and proceed accordingly.

### RELIEF REQUESTED AND REASONS THEREFORE

18. By this Motion, the Debtor seeks authority to use cash collateral pursuant to sections 105, 363(c)(2)(B) and 363(e) of the Bankruptcy Code.

19. As set forth in the Sabo Affidavit, Bancorp or its successor, ACT has an alleged perfected security interest in the Debtor's assets, including its cash, cash equivalents and accounts receivable (collectively, the "Cash Collateral"). Other creditors, such as the Second Mortgage Holders may also be asserting a security interest in the Debtor's assets.

20. The Debtor should be authorized to use the Cash Collateral in the ordinary course of its business and in accordance with the Budget annexed hereto as Exhibit "A". As articulated in more detail in the Sabo Affidavit, Bancorp or ACT is adequately protected by an equity cushion in the Arena and the fact that the collateral will not be diminishing in value.

4

1133164_1

21. For the Debtor to have an opportunity to reorganize for the benefit of all creditors, the Debtor must be authorized to use the Cash Collateral.

## LEGAL AUTHORITY

22. Pursuant to section 363(a) of the Bankruptcy Code, cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents . . ." and the proceeds thereof. Pursuant to section 363(c)(2) of the Bankruptcy Code and Bankruptcy Rule 4001 (b), a debtor may not use cash collateral unless the entity that has an interest in such cash collateral consents, or until this Court authorizes the use of cash collateral after notice and a hearing, upon a finding that the interest of the secured party is adequately protected.

23. Section 363(c)(2) of the Bankruptcy Code permits this Court to allow a debtor to use cash collateral so long as the debtor provides its secured creditors with adequate protection. "Adequate Protection" is not defined in the Bankruptcy Code, although section 361 of the Bankruptcy Code sets forth three non-exclusive methods of how an interest in property may be adequately protected.

24. "Adequate Protection" is aptly described as "a balancing of the debtor's and a creditor's respective harm." In re Carson, 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted). The legislative history to section 361 of the Bankruptcy Code reflects Congressional intent to give the Court flexibility to fashion adequate protection in light of the facts of each case and general equitable principles. In re 5-Leaf Cover Corp., 6 B.R. 463, 466 (Bankr. S.D.W.Va. 1980).

25. The "interest" of a secured creditor which is entitled to be protected is the value of the secured creditor's allowed secured claim; that is, the amount of the secured creditor's

claim up to the value of the collateral upon which the secured creditor has a lien as of the relevant valuation date. In re Shriver, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983); In re South Village, Inc., 25 B.R. 987, 994 (Bankr. D. Utah 1982). The alleged secured creditor is only entitled to assurance that the value of its lien will not decrease as a result of the automatic stay and, if it does, that it will receive something as compensation for the decrease. In re Ramco Well Service, Inc., 32 B.R. 525, 531 (Bankr. W.D. Okla. 1983). Thus, where the value of the collateral is not declining, a debtor need not do anything for the secured creditor as it is adequately protected. Id; accord, In re Price, 40 B.R. 578, 580 (Bankr. N.D. Tex. 1984).

26. In this case, the Debtor's collateral will not diminish in the near term. In addition, Bancorp or ACT's interest is protected by an equity cushion in the Arena. As for the Second Mortgage Holders, it is anticipated that they will be consenting to the relief requested herein.

27. The Debtor hereby seeks interim and final use of cash collateral to preserve its assets so as to maintain and maximize their value for the benefit of all parties-in-interest.

28. A denial of the use of Cash Collateral to fund the Debtor's day-to-day operations and restructuring costs will severely harm the Debtor at a critical time since the Debtor is without sufficient unencumbered funds to meet its ongoing operating expenses and restructuring costs.

## NOTICE

29. Notice of this Motion and the proposed form of order has been provided to: (i) the Office of the United States Trustee; (ii) the Debtor's prepetition lenders and the secured creditors; (iii) the IRS and (iv) each of the Debtor's twenty (20) largest unsecured creditors. In

light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

30. The Debtor respectfully seeks a two-part hearing process. First, pursuant to Bankruptcy Rule 4001(b)(2), the Debtor seeks a preliminary hearing on the use of Cash Collateral in accordance with the Budget on less than fifteen (15) days' notice.

31. Second, the Debtor seeks a final hearing on at least fifteen (15) days' notice. At a minimum, the Debtor proposes to give notice pursuant to Bankruptcy Rule 4001(b)(1) and (3) to the Office of the United States Trustee, the IRS, all secured creditors, the twenty (20) largest unsecured creditors, any other parties claiming an interest in the cash collateral, and any other party who has requested notice.

## **NO PRIOR REQUEST**

32. No previous motion for the relief sought herein has been made to this or to any other court.

## **WAIVER OF BRIEF**

33. As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement of D.N.J. LBR 9013-2 of filing a brief be waived.

WHEREFORE, the Debtor respectfully requests that this Court preliminarily and finally approve the Debtor's use of Cash Collateral, pursuant to the Budget, and in the ordinary course of business, and grant such other and further relief as this Court deems just and equitable

DATED: July 16, 2013

Respectfully submitted,

**NORRIS, McLAUGHLIN & MARCUS, PA**
*Proposed Counsel for the*
*Debtor and Debtor-In-Possession*

By: /s/ *Morris S. Bauer*
Morris S. Bauer, Esq.
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807
(908) 722-0700 Telephone
(908) 722-0755 Facsimile

1133164_1

# EXHIBIT A

# RAMS ASSOCIATES, LP
# 13 WEEK CASH FLOW BUDGET

|  |  | Jul-13 | Aug-13 | Sep-13 | Oct-13 |
|---|---|---|---|---|---|
| **BEGINNING CASH** |  | 34,442 | 10,944 | (7,789) | 8,478 |
|  |  |  |  |  |  |
| **RECEIPTS** |  | 10,000 | 85,000 | 120,000 | 120,000 |
|  |  |  |  |  |  |
| **DISBURSEMENTS** |  |  |  |  |  |
|  | JCPL Acct 1 | 0 | 17,000 | 17,000 | 17,000 |
|  | JCPL Acct 2 | 0 | 15,000 | 15,000 | 15,000 |
|  | NJ Natural Gas Acct 1 | 0 | 3,800 | 3,800 | 3,800 |
|  | NJ Natural Gas Acct 2 | 0 | 3,400 | 3,400 | 3,400 |
|  | Verizon | 0 | 550 | 550 | 550 |
|  | Optimum | 0 | 189 | 189 | 189 |
|  | Jersey Elevator | 0 | 197 | 197 | 197 |
|  | ADP - Payroll | 15,000 | 30,000 | 30,000 | 30,000 |
|  | Affordable Pump | 0 | 149 | 149 | 149 |
|  | Chem Search | 0 | 1,200 | 1,200 | 1,200 |
|  | Creative Inc. Web | 0 | 3,200 | 3,200 | 3,200 |
|  | CM Mechanical (Service Contract) | 2,315 | 2,315 | 2,315 | 2,315 |
|  | Horizon (Health Insurance) | 0 | 1,300 | 1,300 | 1,300 |
|  | Jersey Paper Co. | 0 | 750 | 750 | 750 |
|  | Philadelphia Liability Insurance | 6,900 | 6,900 | 6,900 | 6,900 |
|  | Sakontis Disposal | 843 | 843 | 843 | 843 |
|  | Referee Payments | 6,400 | 12,800 | 12,800 | 12,800 |
|  | Town Square Media Advertisement | 500 | 1,000 | 1,000 | 1,000 |
|  | Office Supplies & Equipment | 0 | 600 | 600 | 600 |
|  | Reynwood Phone System | 540 | 540 | 540 | 540 |
|  | United States Trustee Fees |  |  |  | 1,950 |
|  | Miscellaneous Repairs | 750 | 1,500 | 1,500 | 1,500 |
|  | Miscellaneous Cash Expense | 250 | 500 | 500 | 500 |
|  |  |  |  |  |  |
| **TOTAL DISBURSEMENTS** |  | 33,498 | 103,733 | 103,733 | 105,683 |
|  |  |  |  |  |  |
| **ENDING CASH** |  | 10,944 | (7,789) | 8,478 | 22,795 |